MOSCAHLADES BROS. *v.* UNITED STATES (No. 2602) [1]

1. CONSTRUCTION, PARAGRAPH 744, TARIFF ACT OF 1922—OLIVES.

Paragraph 744, Tariff Act of 1922, provides for olives: (1) Green in brine; (2) ripe in brine; (3) pitted or stuffed; (4) dried ripe; and no others. The acts of 1909, 1913, and 1921 each provided in one paragraph, for *all* olives. This departure manifests a congressional intention to include in paragraph 744, of the 1922 act, only such olives as its language embraces.

2. SAME—"IN BRINE."

Brine is "water saturated or strongly impregnated with salt." *Delapenha & Co. v. United States*, 6 Ct. Cust. Appls. 18. A small quantity of fluid, from a quart to two gallons, found in a 50-gallon barrel of dry-salted olives is not brine. "In brine" means immersed in brine.

3. CONSTRUCTION, PARAGRAPH 749, TARIFF ACT OF 1922—"FRUITS * * * PRE-SERVED"—OLIVES, SALTED—SIMILITUDE.

Olives are fruit. Ripe olives, cured by dry-salting, are "fruits * * * preserved," under paragraph 749, Tariff Act of 1922, and not ripe olives in brine under paragraph 744. The similitude paragraph (1460) applies only to unenumerated articles, and a general description is an enumeration. Consequently, they are not classifiable under paragraph 744 by similitude.

United States Court of Customs Appeals, March 27, 1926

APPEAL from Board of United States General Appraisers, G. A. 8968 (T. D. 40811)

[Reversed.]

*Walter F. Welch* for appellant.
*William W. Hoppin* and *Charles D. Lawrence*, Assistant Attorneys General (*Oscar Igstaedter*, special attorney, of counsel), for the United States.

[Oral argument January 20, 1926, by Mr. Welch and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellants entered nine importations of olives under the Tariff Act of 1922. They were returned for duty by the collector in each instance at 20 cents per gallon, under paragraph 744 of said tariff act, as "ripe olives not dried" on six entries, and as "olives in solution" on three entries. The importers protested, in each case claiming the goods to be dutiable under paragraph 749 of said act. The hearings upon the various protests were consolidated by the Board of General Appraisers, and, after a hearing, the protests were overruled, the board holding that the imported goods were dutiable, "if not directly, then by similitude to ripe olives in brine, at 20 cents per gallon as assessed." From the resulting judgment, the importers appeal to this court.

---

[1] T. D. 41482.

The material paragraphs of the Tariff Act of 1922 are as follows:

744. Olives in brine, green, 20 cents per gallon; ripe, 20 cents per gallon; pitted or stuffed, 30 cents per gallon; dried ripe olives, 4 cents per pound.

749. Fruits in their natural state, or in brine, pickled, dried, desiccated, evaporated, or otherwise prepared or preserved, and not specially provided for, and mixtures of two or more fruits, prepared or preserved, 35 per centum ad valorem: * * *

But one witness was heard by the court below, Socrates Moscahlades, a member of the importing firm. From his uncontradicted testimony it appears that the goods imported are Greek black, ripe olives. The olives are picked from the trees ripe, are put into a large vat, with dry salt added, and are left there for from three to five months. During this time a fluid is formed about the olives by the salt and the exudation of the juices of the olives. After they are "cured," they are taken from the vats, washed clean, put into barrels, dry salt is added, and they are shipped in this condition. When they are imported, there is found in each barrel a quantity of fluid, composed of salt and the juices of the olives, varying from one quarter of a gallon to two gallons. When the barrels are opened, this fluid, which is of no commercial value, is thrown away. The olives are then sold by weight for bottling purposes, as Greek black olives, and without further processing will keep two years. The same olives, if not treated, would spoil in perhaps 15 or 20 days. The sample before us shows them to be black in color, somewhat shrunken and wrinkled and solidified, and having a perceptibly oily surface.

A consideration of paragraph 744 leads to the conclusion that four classes of olives are therein provided for, namely: Green olives in brine, ripe olives in brine, pitted or stuffed olives, and dried ripe olives. No other kinds of olives are therein specifically provided for. It is obvious that the olives before us would not come within any one of said classes unless it might be the second, ripe olives in brine.

What is or is not brine has been often considered by the courts in customs cases. Perhaps the most comprehensive discussion of these authorities is found in the opinion of this court filed in *Delapenha & Co.* v. *United States*, 6 Ct. Cust. Appls. 18. There the definition given by standard lexicographers for the word "brine" is adopted, namely: "Water saturated or strongly impregnated with salt." This court has never had occasion to depart from the definition given in the case cited. It must follow, therefore, that the small amount of liquid found in the barrels of olives involved here on importation can not be considered as brine, it being obviously composed of the juices of the olives in combination with salt. The barrels in which the olives here were imported are shown to have contained approximately 50 gallons each. Fifty gallons of olives in a barrel, together with from a quarter gallon to two gallons of fluid can not be said to be

"in brine." As we construe the statutory language, olives, to be in brine, must be immersed in it.

It follows, therefore, that these olives are not specifically provided for in said paragraph 744

But the Government insists it is manifestly the congressional intent to include all olives within this paragraph. There is nothing here to so indicate. It is significant, as pointed out by the court below in its decision filed herein, that in the three preceding tariff acts, all classes of olives were provided for in an olive paragraph. We quote:

Act of Aug. 5, 1909. Par. 275. * * * olives, in bottles, jars, kegs, tins, or other packages, containing less than five gallons each, twenty-five cents per gallon; otherwise, fifteen cents per gallon.

Act of Oct. 3, 1913. Par. 218. * * * olives, 15 cents per gallon.

Emergency act of May 27, 1921. Par. 28. Olives, in solutions, 25 cents per gallon; olives, not in solutions, 3 cents per gallon.

Congress having departed from this line of procedure followed for many years, and having, in the Tariff Act of 1922, designated certain classes of olives for inclusion in paragraph 744, it must be assumed it did not intend to include other classes not so specifically mentioned. *Pustet & Co.* v. *United States*, 13 Ct. Cust. Appls. 530, T. D. 41396, and cases therein cited.

The olives in question are claimed by the importer to be "fruits, otherwise prepared or preserved," under said paragraph 749. That olives are fruit, must be conceded. *United States* v. *Moscahlades Bros.*, 9 Ct. Cust. Appls. 46.

In the recent case of *United States* v. *Conkey*, 12 Ct. Cust. Appls. 552, this court had occasion to examine quite carefully the meaning to be given to the term "prepared or preserved," as used in paragraph 706 of the tariff act of 1922. After a review of the authorities the court there approves the definition of the word "preserve," as given by the New English [Oxford] Dictionary. It is:

To keep from physical or chemical change. To prepare (fruit, meat, etc.) by boiling with sugar, salting, or pickling, so as to prevent its decomposition or fermentation.

Applying this definition to the facts before us, it at once appears that the olives in question are preserved. If so, they come within the language used in paragraph 749, "prepared or preserved," and it does not become important to determine whether they are, in fact, prepared.

The designation "Fruits * * * otherwise * * * preserved," found in paragraph 749, is a sufficient designation of the goods imported here to take them out of the similitude paragraph, 1460. It was said in *United States* v. *Cochran*, 3 Ct. Cust. Appls. 57 (60):

In the application of this provision an article is "enumerated" if it comes within a class made dutiable in general terms by the act, quite as certainly as if the article is made dutiable under an *eo nomine* designation.

The similitude paragraph does not apply except to unenumerated articles. *United States* v. *Stouffer Co.*, 3 Ct. Cust. Appls. 67. The court below, therefore, erred in determining the goods imported were dutiable under paragraph 749 by virtue of 1460, the similitude paragraph.

For the reasons given, the judgment of the court below is reversed and the cause remanded with directions to sustain the various protests filed herein.

*Reversed* and *remanded*.